<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THOMAS A. FINN, | ) |
| Plaintiff, | ) |
| v. | )   Civil Action No. 07-4851 (GEB) |
| J.B. HUNT TRANSPORT SERVICES, INC., et al., | )   **MEMORANDUM OPINION** |
| Defendants. | ) |

<u>**BROWN, Chief Judge**</u>

This matter having come before the Court upon a Motion for Summary Judgment of the defendant J.B. Hunt Transport Services, Inc.'s, ("Defendant"). (Docket Entry No. 12.) The Court has reviewed the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332. For the reasons that follow, the Court grants Defendants' Motion for Summary Judgment.

**I.     BACKGROUND**

Plaintiff was born on September 22, 1944. (Docket Entry No. 15-3 at 1.) Plaintiff was terminated from his place of employment with J.B. Hunt when he was sixty-two years old. (<u>Id.</u>) J.B. Hunt "handles intermodal shipping," or in other words, handles "the intake of freight in shipping containers that come into the facility on trains from different parts of the country." (<u>Id.</u> at 2.)

Plaintiff began working at the company in 1992, as a driver. (Id.) From there, he changed positions in the company several times, including a period, from October 22, 2000, to May 22, 2003, during which he was Fleet Manager. (Docket Entry No. 16 at 4.) During that time period that he served as Fleet Manager, Plaintiff received an overall performance rating of "Meets Requirements" in his February 25, 2001 annual review and in his March 4, 2003 annual review. (Id. at 8 to 9.)

On or about May 27, 2003, when Plaintiff returned to work after being out on leave, he was promoted to the position of Area Service Manager in J.B. Hunt's Elizabeth facility. (Docket Entry No. 15-3 at 7.) His supervisor was Cheryl Sawula. (Id.) Sawula completed a 90 day Performance Review of Plaintiff on September 11, 2003, in which she listed Plaintiff's duties and responsibilities, and listed "Areas of Attention" to highlight the areas that Plaintiff needed to improve. (Id. at 8.) These areas that Sawula identified as needing improvement were third party management and communication, customer service, and equipment accountability. (Id.) Plaintiff signed the September 11, 2003 Review. (Id.)

Thereafter, on October 24, 2003, Sawula completed a Job Performance Documentation, in which she identified those areas that Plaintiff had failed to improve. (Id. at 9.) She stated in this report that "Tom's job performance has been less than satisfactory" due to his "lack of attention lack of priority, lack of communication, and lack of accountability" among other deficiencies. (Id.) Sawula concluded the Documentation by issuing a reprimand and suspending Plaintiff for one day, and including the following language:

> In summation, these areas of attention will be addressed for the final time as immediate improvement is needed. Tom Finn is aware of what is required of him as the Area Service Manager. Tom has been given the tools and resources needed to effectively and efficiently perform the ASM responsibilities. To this date, minimal improvement has been made. This notice will serve as a one day suspension for Tom

> Finn, in following company disciplinary policies. Immediate improvement must be made or further disciplinary action may follow, up to and including termination.

(Id. at 10; Ex. H.) Yet another Performance Documentation, dated March 8, 2004, and signed by both Sawula and Plaintiff on March 17, 2004, was issued, in which Sawula identified two separate instances where Plaintiff had "dispatched loads in a manner violative of rail partner business guidelines, costing the company approximately $1,000 in unnecessary charges to transload the loads." (Id. at 10.)

On March 8, 2004, Sawula completed another Performance Documentation, in which she stated:

> In summation, the overall ability of Tom Finn to handle the responsibilities of the Area Service Manager position is lacking. He has been given the necessary tools to perform his job but still doesn't seem like Tom can handle the responsibility of this position. Tom will again be spoken to regarding the events contained in this documentation and made aware that drastic improvements need to be made immediately. If drastic improvements are not made immediately, termination could be the next step in our progressive disciplinary policy.

(Id. at 10-11; Ex. I.) Plaintiff has acknowledged that these instances occurred. On May 2, 2004, Sawula completed an annual Employee Evaluation form, stating that he "needs improvement" in eleven of the enumerated categories, and that he exhibited "unacceptable" performance in the categories of communication and self management among others. (Id. at 11; Ex. J.)

Robert Coulter, Sawula's supervisor, reviewed the May 2, 2004 Employee Evaluation Form, and provided the following comments:

> In working with Mr. Finn for over a year now, I have had the opportunity to observe his abilities, work habits, work ethic, and general demeanor. I have also had the opportunity to audit the Elizabeth, NJ operation, breaking it down to position specific responsibilities and effectiveness. . . in this case those of the Area Service Manager. I feel that Mr. Finn is giving what looks to be his best efforts but it seems to be too much responsibility for him, in my opinion . . . .

> Over the last year and a half, Cheryl Sawula has worked with Mr. Finn to try and enhance his awareness of the responsibilities of the ASM role and sharpen his abilities to handle the work load. She will continue to offer the tools, time, and resources needed for Mr. Finn to effectively manage the ASM responsibilities. However, we need to see immediate, significant, and continual improvement from Mr. Finn as it relates to all aspects of the Area Service Manager position. If improvement is not made, we may need to make changes in the office responsibilities.

(Id. at 12 - 13; Ex. J.) Within five months of this evaluation, Plaintiff was transferred out of his position as Area Service Manager back to the position of Fleet Manager at the Elizabeth facility, and this position was considered "lower in the management hierarchy than his previous position as Area Service Manager." (Id. at 13.)

An annual performance evaluation was completed on May 1, 2005, in which it states that Plaintiff's overall performance "needs improvement." Sawula also completed another Job Performance Documentation on July 14, 2005, in which she memorialized three separate incidents involving Plaintiff: "1) unprofessional dealings with a driver; 2) purported termination of a business relationship with a drayage carrier which plaintiff had no authority to do; and 3) a late delivery to a customer which was attributed to plaintiff's 'lack of attention, priority, accountability and communication.'" (Id. at 14.) Plaintiff, nevertheless, received a raise in 2005.

On April 30, 2006, in Plaintiff's annual performance evaluation, again, Plaintiff, in eleven categories received a "needs improvement" score. (Id.) On November 29, 2006, Plaintiff was terminated. (Id. at 15.) Prior to termination, Sawula had prepared a resignation letter for Plaintiff to sign and an accompanying severance package, but Plaintiff did not accept the package and did not sign the resignation letter. (Id.)

Plaintiff disputes the truth of the matters asserted within the various reviews completed by

Sawula, he asserts that his performance had improved and that it was sufficient during the term of his employment, and he argues that he was discriminated against due to his age. Plaintiff filed a complaint in Superior Court of New Jersey, Somerset County, on August 2, 2007, and J.B. Hunt subsequently filed an Answer on September 18, 2007. J.B. Hunt removed the action to this Court on October 5, 2007. This motion was filed on March 13, 2009.

## II.   DISCUSSION

### A.   Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Hersh v. Allen Prods. Co. Inc., 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

### B.   Analysis

#### 1.   Age Discrimination Claim (Count One)

Defendant argues that Plaintiff fails to establish that he was discriminated against because the undisputed facts show that he was not qualified for the job from which he was terminated. (Docket Entry No. 12-3 at 9.)  Defendant also argues that should the Court determine that Plaintiff has shown that he was qualified for the job from which he was terminated, that the Court should nevertheless grant it motion for summary judgment because Plaintiff has failed to provide sufficient evidence to show that the reasons that Defendant articulated to justify the termination were not merely pretext.  (Id. at 12.)

Plaintiff, however, argues that his employment history shows that he was promoted many times, received many positive employee reviews, and was given several raises and merit bonuses during his many years working for Defendant, and that the reasons that Defendant asserted to justify the termination are patently false. (Docket Entry No. 15-2.)  Plaintiff asserts that prior to 2003 when Sawula became his manager, he had for the preceding five years received satisfactory reviews, but that the negative reviews began "abruptly" thereafter, and it was at that time that Defendant "began keeping an Employee Relations Phone Log . . . detailing [Plaintiff's] alleged shortcomings, threatening [his] job, and containing patently false information." (Docket Entry No. 15-3 at 7 to 8.) Plaintiff certifies that "[t]he alleged negative information contained in the annual reviews, Job Performance Documentation(s), and Telephone Log over [his] last two years of employment was [sic] fabricated, exaggerated and failed to account for the massive shipping growth in the company, failed to account for company equipment shortages, [and] failed to account for being left short-staffed for 3-6 months when [he] was [Area Shipping Manager]." (Id. at 8.)  Plaintiff asserts that his job responsibilities were unreasonably increased, and such expansion of responsibilities was not likewise assigned to younger counterparts.  (Id.)

6

The purpose of the NJLAD is the ban employment discrimination on the basis of certain enumerated attributes, including age. See N.J.S.A. § 10:5-12(a). The New Jersey Law Against Discrimination ("NJLAD") provides that:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
>
> a. For an employer, because of the . . . age . . . of any individual . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

N.J.S.A. § 10:5-12. Discrimination claims brought under the NJLAD must be analyzed according to the burden-shifting framework, which was set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and later clarified in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981), and St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). "Analysis of a claim made pursuant to the NJLAD generally follows analysis of a Title VII claim." Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 498 (3d Cir. 1999). The framework consists of three steps. First, a plaintiff must present sufficient evidence to support a prima facie case of discrimination. Hicks, 509 U.S. at 506. To establish such a prima facie case, the plaintiff must show that (1) he is a member of a protected class; (2) he is qualified for the position in question; (3) he suffered from an adverse employment decision; and (4) the employer sought to or did fill the position with a similarly qualified person who was not a member of the protected class. McDonnell Douglas, 411 U.S. at 802. In Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997), the Third Circuit described the type of adverse employment decision that is actionable, stating that it must be "sufficiently severe as to alter the employee's 'compensation, terms, conditions, or privileges of employment,' or to

'deprive or tend to deprive [him or her] of employment opportunities or otherwise adversely affect his [or her] status as an employee.'" Id. (citation omitted).

Once the plaintiff establishes a prima facie case, the burden of production then shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for its actions. Hicks, 509 U.S. at 507; Burdine, 450 U.S. at 254; McDonnell Douglas, 411 U.S. at 802.

If the defendant satisfies this burden, the reviewing court must proceed to the third step. At this stage, the burden of production shifts back to the plaintiff who must come forward with admissible evidence showing that the defendant's articulated nondiscriminatory reasons were not the true reasons for the adverse action, but merely a "pretext for discrimination." Hicks, 509 U.S. at 507-08; Burdine, 450 U.S. at 253. A plaintiff will satisfy this burden by providing evidence that would cause a fact finder to believe the reasoning articulated by the defendant or believe that invidious discriminatory reasons were more likely than not a motivating cause of the defendant's actions. Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994). Although the evidentiary burdens shift between the plaintiff and the defendant, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253.

Here, Defendant argues that under the first prong, Plaintiff has failed to show that he was qualified for the position from which he was terminated, and that therefore, he has failed to meet his burden of a prima facie showing of age discrimination. However, the Court rejects this argument as a matter of law. The parties agree that Plaintiff previously held the position from which he was terminated, specifically that of a Fleet Manager, and previously, between the years of 2001 to 2003, had received a performance rating of "Meets Expectations" while in that position. After being

8

promoted to Area Service Manager in 2003, Plaintiff began receiving an overall performance rating of "Needs Improvement." However, Plaintiff was demoted to Fleet Manager in 2005, and it was from his position that he was terminated. The Court concludes that the undisputed facts show that Defendant had once held the position as Fleet Manager, and that he had received a satisfactory rating from his supervisor at that time. Therefore, the Court concludes that indeed Plaintiff was qualified for the position from which he was terminated, and accordingly, holds that Plaintiff has demonstrated a prima facie case of age discrimination. In so reaching this conclusion, the Court also notes that it is undisputed that Plaintiff was sixty-two years old at the time that he was terminated, that he was fired, and that the person that filled the position left vacant after Plaintiff's termination was significantly younger than Plaintiff.

      The Court turns to the second prong, and examines whether Defendant has met its burden in articulating a legitimate, nondiscriminatory reason for its actions. The Court concludes that Defendant has indeed met this burden. Specifically, Defendants state that Plaintiff was fired because he did not perform his duties well, or in plain language, that he was not good at his job and that he repeatedly failed to make the necessary improvements after being cautioned that such improvements were necessary. This is a legitimate reason that would justify Plaintiff's termination.

      Therefore, the Court reaches the issue of whether Plaintiff has met his burden under the third prong, namely, whether the undisputed facts show that the reason articulated by Defendant is merely pretext for discrimination. The Court concludes that Plaintiff has failed to provide evidence or point to a dispute in material fact that would cause a fact finder not to believe the reasoning articulated by Defendant or believe that invidious discriminatory reasons were more likely than not a motivating cause of the defendant's actions. Plaintiff has stated that he was given more responsibilities than his

9

counter-parts and that Sawula, his supervisor, basically campaigned to have him fired. However, "a plaintiff alleging unlawful age discrimination 'cannot survive summary judgment . . . simply by pointing to evidence that could convince a reasonable factfinder that he did as well as he could under the circumstances.'" Keller v. Orix Credit Alliance, 130 F.3d 1101, 1009 (3d Cir. 1997). Further, "[t]he mere existence of positive evaluations by a supervisor does not give rise to the inference that negative evaluations from another supervisor were a pretext." Hunter v. Rowan Univ., 299 Fed. Appx. 190, 195 (3d Cir. 2008). Because Plaintiff has only shown that Sawula negatively reviewed him while he was Fleet Manager, and he had previously received a positive review for that position, and because Plaintiff also gives various reasons that he received negative performance reviews due to the extra responsibilities put upon him, stating that the tasks were impossible to complete, among other excuses, this Court concludes that Plaintiff has not met his burden and that summary judgment is appropriate. Therefore, the Court will grant Defendant's Motion for Summary Judgment.

### 2. Intentional Infliction of Emotion Distress Claim (Count Two)

A plaintiff setting forth a claim of intentional infliction of emotional distress must show:

(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct . . . ;

(2) that the conduct was 'extreme and outrageous';

(3) that the actions of the defendant were the cause of the plaintiff's distress . . . ; and

(4) that the emotional distress sustained by plaintiff was severe.

Young v. Hobart W. Group, 385 N.J. Super. 448, 467-68 (App. Div. 2005) (quoting 49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc., 227 N.J. Super. 449, 474 (App. Div. 1988)). As the New

Jersey Supreme Court further clarified, "liability may be imposed where the conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Taylor v. Metzger, 152 N.J. 490, 509 (1998).

Plaintiff is not entitled to recovery as a matter of law for intentional infliction of emotional distress. Given this Court's discussion regarding his claim of age discrimination, and this Court's subsequent denial of relief for that claim, the Court holds that Plaintiff has not pointed to any facts that would be "so outrageous," "so extreme," "atrocious," or "utterly intolerable" to warrant relief. Therefore, the Court grants Defendants' Motion for Summary Judgment in regard to Count Two of the Complaint.

### 3.   Breach of Contract (Count Three)

Plaintiff's third cause of action is a common law breach of contract claim brought pursuant to Woolley v. Hoffmann-La Roche, Inc., 99 N.J. 284 (1985), modified by, 101 N.J. 10 (1985). Plaintiff argues that he "was subject to the rules and regulations concerning his employment as specifically set forth in the Employee Manual" and that "Defendants' wrongful termination of [Plaintiff], without sufficient cause and without affording his due process, violated the contractual rules set forth in the Employee Manual." (Complaint at ¶¶3, 4.)

Defendants argue that the company does not have an employee manual for non-driver employees, and because Plaintiff was not a driver, no such handbook existed. (Docket Entry No. 12-3 at 19.)

The parties agree that the only handbook that Defendant distributes is one for its driver

11

position. The parties also agree that while Plaintiff originally was hired as a driver for the company, he was a Fleet Manager at the time he was terminated. However, these factual issues are irrelevant because courts have held that a breach of contract claim that seeks damages for discriminatory acts on the basis of a statement in a policy manual is preempted by the NJLAD. See DeCapua v. Bell Atlantic - New Jersey, Inc., 313 N.J. Super. 110, 127 (Law Div. 1998); Santiago v. City of Vineland, 107 F. Supp. 2d 512, 567 (D.N.J. 2000); Dimare v. Metlife Ins. Co., 2008 U.S. Dist. LEXIS 43093, at **9-10 (D.N.J. June 2, 2008). Because this Court has determined that summary judgment is appropriate in this matter under the NJLAD, the contract claim has been preempted and further discussion regarding it is unnecessary.

### III.   CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment. An appropriate form of Order accompanies this Opinion.

Dated: July 7, 2009

                                                       s/ Garrett E. Brown, Jr.
                                                  GARRETT E. BROWN, JR., U.S.D.J.